IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-2183-RM-MEH

ZURICH AMERICAN INSURANCE CO., as
subrogee of H. PLAZA, LLC

    Plaintiff,

v.

DILLON COMPANIES, LLC, dba
KING SOOPERS,

    Defendant.

## ORDER

This case arose out a hailstorm that took place on June 13, 2018, which impacted a shopping plaza in Colorado Springs where Defendant Dillon Companies, LLC ("King Soopers") operates a store.[1] The owner of that shopping area, H. Plaza, LLC ("Plaza") had the roofs of its property examined and ultimately contracted to have the roof replaced. Plaza then sought coverage for the roof from its insurance provider, Plaintiff Zurich American Insurance Co. ("Zurich"). Zurich, acting as the subrogee of Plaza, brought this suit against King Soopers.

Before the Court are the parties' opposing Motions for Summary Judgment. (ECF Nos. 36, 43.) The parties have fully briefed both Motions and they are ripe for resolution. Upon review of the Motions, relevant parts of the court record, and applicable statutes and case law, and being otherwise fully advised, the Court finds and orders as follows.

---

[1] The factual background is, as pertinent to this order, entirely undisputed unless otherwise expressly noted.

I.   **BACKGROUND**

King Soopers is a tenant in the Plaza property where it has operated a store for almost 20 years. (ECF No. 39.) King Soopers and Plaza entered into a detailed, 20-year lease in 2002 that delineated both landlord's and tenant's responsibilities for maintenance and insurance coverage, among other things. In June of 2018 a hailstorm hit Colorado Springs. King Soopers had the roof on its building inspected and concluded that there was no significant damage that would require its replacement. Plaza, however, unbeknownst to King Soopers, decided that the roof needed to be replaced. King Soopers first discovered that Plaza was replacing the roof in November of 2019, when employees noticed workers on the roof. At that time, King Soopers reached out to Plaza to get additional information and learned that the job was already 75% complete. (ECF No. 38-8.) King Soopers expressly inquired into its financial responsibility for the new roof and Plaza informed them that "Tenants will not be billed for this, it's covered with insurance money from the hail damage claim."

Plaza made a claim for the roof replacement with Zurich. Plaza and Zurich had some disagreements about the claim, but ultimately Zurich paid for the roof replacements for the Plaza property. (ECF Nos. 38-10, 38-11.) The portion of that payment attributable to the King Soopers roof was $902,613. (ECF No. 44-5.)

In June of 2020, Zurich filed an action against King Soopers in Colorado State Court, alleging a breach of contract. (ECF No. 3.) King Soopers removed the case to this Court. (ECF No. 1.) The parties then each filed motions for summary judgment.

## II. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

When the court is presented with cross motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations and quotations marks omitted). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

### b. Subrogation

"Subrogation is defined as the 'substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant.'" *Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo. 2009) (quoting Dodd, *Law of Remedies*, § 4.3(4) (2d ed.1976)). "[B]y paying a debt that rightfully belongs to another, the subrogee has created a windfall for the debtor. Subrogation allows the subrogee to pursue that amount against the rightful debtor, thus eliminating any unjust transfer of responsibility for the debt." *Id.* Subrogation is generally considered an equitable remedy, but it can also be a right provided for by contract. *Id.* Many insurance policies provide for subrogation rights—the insurer that pays, for example, for damage to its insured's property can seek to recover that money from the individual or entity that caused the damage.

Once an insurance company has subrogated the claims of its insured, it "stand[s] in the shoes of the insured" and "may pursue any rights held by the insured subrogor." *Id.* However, a "subrogated insurer 'has no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have.'" *Id.* (quoting 16 *Couch on Insurance* § 222:5 (3d ed.)).

### c. Breach of Contract

In order to establish its claim for breach of contract, a plaintiff must establish (1) the existence of a contract; (2) performance by the plaintiff or some justification for its nonperformance; (3) the defendant's failure to perform the contract; and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). As the plaintiff, Zurich must carry the burden of proving a prima facie case. *Id.* at 1057. "The 'performance' element in a breach of contract action means 'substantial' performance." *Id.* at 1058. "Substantial performance

4

occurs when, 'although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, [the defendant] has received substantially the benefit he expected.'" *Id.* (quoting *Newcomb v. Schaeffler*, 279 P.2d 409, 412 (Colo. 1955)).

### III.   APPLICATION

As previously noted, to prove a claim of breach of contract, Zurich must prove that (1) a contract existed between King Soopers and Plaza, (2) King Soopers failed to perform its obligation under the contract, (3) Zurich and/or Plaza did perform or had a justification for failing to perform, and (4) Zurich suffered damages as a result. The first and fourth elements are undisputed here—the parties agree that the lease constitutes a contract between King Soopers and Plaza, and they do not dispute that Zurich paid for the roof which, if there was a breach, constitutes damages. The parties vigorously dispute, however, whether Zurich can demonstrate that the second and third elements are met in this case. Both of those elements turn on the interpretation of the contract, a question of law that this Court is well positioned to address without the presentation of additional evidence. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313-14 (Colo. 1984) ("Interpretation of a written contract is generally a question of law for the court.").

When the Court interprets a contract, it strives to give effect to the intent of the parties. *Id.* at 1313. It does so by looking at the contract as a whole and striving to harmonize all of its provisions so as to give each term meaning. *Id.* "It is only where the terms of an agreement are ambiguous or are used in some special technical sense not apparent from the contractual document itself that the court may look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *Id.* at 1314. "It is axiomatic that in the absence

5

of an ambiguity a written contract cannot be varied by extrinsic evidence." *Id.* The question of whether a contract is ambiguous is also a question of law for the court. *Id.*

In this case, the parties strongly disagree about whether the lease required King Soopers to pay for the new roof—it is undisputed that King Soopers did not do so. If the contract required King Soopers to pay for the roof, then Zurich has offered sufficient proof of the second element for it to withstand King Soopers' Motion for Summary Judgment. If King Soopers did not have that obligation, then Zurich cannot prove any breach of contract by King Soopers and therefore its case could not survive summary judgment. If, on the other hand, Zurich's reading of the contract is correct then the Court can consider whether Plaza/Zurich performed.

On the third element, too, the parties completely disagree as to whether Plaza (and, standing in its shoes, Zurich) was required to give King Soopers notice of its breach of the contract before taking any remedial action. King Soopers asserts that it was entitled to notice of any breach under the "Default" provisions of the lease, and it argues that it never received any such notice. Zurich argues that no notice was required and that, in the alternative, even if it was, the complaint in this case satisfied that requirement. Also in the alternative, Zurich argues that if King Soopers was entitled to notice of its breach then so, too, was Plaza/Zurich entitled to notice of the breach committed by failing to provide King Soopers with notice. If King Soopers is correct, then Zurich cannot prove that it/Plaza performed and therefore the case cannot survive summary judgment. If, on the other hand, any of Zurich's arguments prevail then King Soopers' Motion for Summary Judgment must be denied.

For the purposes of efficiency, the Court will assume for the purposes of this order that the lease required King Soopers to pay for the hail damage to the new roof. Therefore, the Court will consider the arguments regarding the purported notice requirements.

6

As noted, Zurich's first argument is that the lease did not require notice in the event of a breach like this one.  Specifically, Zurich argues that the section in which the notice requirement is found, titled "Default by Tenant" "applies to defaults where the tenant has not paid the landlord, or otherwise faces eviction."  (ECF No. 48.)  As pertinent here, the lease provides that if the tenant defaults,

> Landlord will not exercise *any right or remedy* provided for in this Lease *or allowed by law* (including delivery of a Demand for Payment or Possession or Notice to Quit under the forcible entry and detainer laws) because of *any default of Tenant*, unless Landlord shall first have given written notice thereof to Tenant, and Tenant, within a period of twenty (20) days thereafter shall have failed to pay the sum or sums due, if the default consists of the failure to pay money, or, *if the default consists of something other than the failure to pay money*, Tenant shall have failed within thirty (30) days thereafter to begin the correction of the default or thereafter fails to actively and diligently and in good faith proceed with and continue the correction of the default until it shall be fully corrected.

(ECF No. 39, p.23, emphasis added.)  In the Court's view, this provision is clearly broader than Zurich contends.  It addresses not only eviction, but "any right or remedy" under the lease or allowed by law; it applies in the event of "any default" by King Soopers, not just a failure to pay rent and, in fact, specifically provides for defaults involving "something other than the failure to pay money."  Furthermore, there is no other provision in the lease that addresses what Zurich apparently believes are breaches that fall short of a full default.  This provision is the only one addressing breaches by a tenant and therefore the Court concludes that it applied in this case.  Under the provision, King Soopers was entitled to notice at least twenty days before Plaza or Zurich exercised any right or remedy that it had.

Zurich next argues that even if notice was required, strict compliance was not necessary and that by filing the Complaint in this case, which contained all the facts pertinent to the claim, it did provide adequate notice under the lease.  The Court disagrees.  In this case, Zurich sought to exercise a remedy authorize by law, that is, to sue King Soopers for breach of contract.

Therefore, Zurich sought to exercise its remedy and it did so without providing notice to King Soopers. Under Zurich's logic, a landlord could give notice under this Lease by evicting the tenant, yet that would clearly render the notice requirement meaningless. When interpreting a contract, however, this Court must seek to "harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg.*, 687 P.2d at 1313.

While notice need not take any particular form, such provisions are intended to provide the allegedly breaching party with an opportunity to investigate the claim and potentially cure the breach. *See, e.g., Hoffman's Double Bar Pine Nursery v. Fyke*, 633 P.2d 516, 518 (Colo. App. 1981). If an eviction could constitute sufficient notice under the contract, the tenant would be entirely deprived of the opportunity to cure the alleged default before being removed from the premises. The same reasoning applies where the claimed notice is the filed complaint—the tenant is deprived of the opportunity to potentially cure before being dragged into court.

The Court is also unpersuaded by Zurich's argument that if this reading of the lease is correct then it, too, would have been entitled to notice of its breach—i.e., it did not receive notice of its failure to provide notice. This argument is clearly circular and absurd, but it is also unsuccessful for a simple reason. In this case, King Soopers did not seek to exercise any remedy under the contract or at law to enforce Zurich/Plaza's obligation to provide it with notice and time to cure. It did not allege that Plaza somehow defaulted on the lease by failing to notify it. Instead, it simply argues that the failure to provide it with notice precludes Zurich from exercising a remedy against King Soopers. Thus, whether Zurich/Plaza were entitled to notice of the failure to notify King Soopers is irrelevant to the Court's analysis.

In short, the Court concludes that Zurich has provided no facts that would permit a reasonable jury to conclude that it complied with the obligation under the lease to notify King

Soopers of its default. Because Zurich has failed to do so, King Soopers is entitled to summary judgment in its favor.[2]

IV. **CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant Dillon Companies, LLC's Motion for Summary Judgment (ECF No.36) is GRANTED;

2. Plaintiff Zurich American Insurance Co.'s Second Amended Motion for Summary Judgment (ECF No. 43) is DENIED;

3. Defendant Dillon Companies, LLC's Motion to Strike (ECF No. 65) is DENIED AS MOOT; and

4. The Clerk of the Court is directed to ENTER JUDGMENT in favor of Dillon Companies, LLC and CLOSE this case.

DATED this 30th day of March, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[2] The Court notes that although Zurich also filed a Motion for Summary Judgment, the resolution of King Soopers' Motion effectively determines the merits of Zurich's Motion. In any event, were the Court to reach Zurich's Motion and analyze it independently, the Court concludes that King Soopers has presented adequate questions of material fact that would preclude the Court from granting summary judgment in favor of Zurich. For example, King Soopers presents some evidence that the hailstorm at issue did not necessitate the replacement of the building's roof. On that basis, a reasonable jury could conclude that King Soopers did not breach any duty under the lease.